AMERICAN RAILROAD COMPANY OF PORTO RICO, Appellant, *v.* PUBLIC SERVICE COMMISSION OF PUERTO RICO ET AL., Appellees.

No. 8560. Argued January 19, 1942.—Decided July 14, 1943.

*Mariano Acosta Velarde, Federico Acosta Velarde,* and *Donald R. Dexter* for appellant. *Tomás Torres Pérez* for appellee, Public Service Commission. *A. Dones Padró* for appellees, petitioners before the commission.

Mr. Justice Travieso delivered the opinion of the court.

The American Railroad Company of Porto Rico has taken this appeal from the judgment of March 14, 1942, rendered by the District Court of San Juan, affirming the decision of the Public Service Commission of March 8, 1939, by virtue of which the company, appellant herein, was ordered to establish a grade crossing over its railway tracks "beyond Stop 26½, known as Mayor Street, situated in the lots of don Pedro Bolivar," in Santurce.

The petition for the establishment of the grade crossing was filed with the Public Service Commission by a number of proprietors of houses built on land belonging to the People of Puerto Rico, situated on the southern side of the railway tracks. The appellant company objected to the petition, and filed with the Commission, and later with the district court, eleven separate defenses. It is on these defenses, which were dismissed, that appellant has predicated the eleven assignments of error charged against the lower court.

1 and 2. That the petition filed before the Commission does not state facts sufficient to show the necessity and convenience of the grade crossing sought; and, further, that the petition is not verified pursuant to §67 of the Public Service Act and Rule 1, Art. 11 of the Regulations of the Commission.

Section 67 of the Public Service Act above-mentioned (Act No. 70 of 1917, vol. II, p. 432) regulates the manner of filing the complaints with the Commission and their requirements. The complainant must apply to the Commission

by petition, duly verified by him, which shall contain a concise statement of all the material facts upon which the complaint is founded. However, in the present case we are not dealing with a complaint where a person complains of anything done, or that has not been done, by any public-service company in violation of the provisions of the Public Service Act or of any order or decree of the Commission. We are dealing with a petition addressed to the Commission praying the latter, according to the powers granted to it under §69 of the same Act, to carry out an investigation and to issue an order as to the convenience, necessity, and utility of the construction of the grade crossing sought. The Commission is authorized to make such an investigation on its own initiative without any need of filing a verified petition. The petition filed in this case was for the sole purpose of obtaining an order for the construction of the grade crossing, which is considered necessary as an outlet for the persons living in about one hundred and fifty houses situated south of the railway track. The petition contains no complaint against the company. It only seeks the rendition of a new service. The lower court did not err in deciding that the petition filed was sufficient.

3. The third assignment is that the lower court committed error in deciding that the order of the Commission was valid, without it having been previously determined whether the crossing sought was of public necessity and convenience.

Appellant alleges that in order to construct a public road across the railroad, it is a prerequisite to obtain a "certificate of public convenience" from the Public Service Commission, as prescribed by §6 of Act No. 70 of 1917.

The order of the Commission directs the railroad company to establish a grade crossing in the place referred to in the petition in this case. Undoubtedly, the Commission is authorized to order the company to construct crossings in

the places indicated by said Commission. This authority arises from §§3(*r*), 6, 24, and 34 of the Public Service Act. According to these Sections, the Public Service Commission is the only one called upon to determine the public convenience of a crossing and, as the lower court stated, "the order in this case necessarily involves the finding of the Commission that the crossing is convenient."

Pursuant to §40 of our Public Service Act, "When application shall be made to the Commission by any public service company for the approval by the commission . . . . or when application shall be made to the commission for the approval of the construction, alteration, relocation or abolition of any crossing; . . . such approval, in each and every such case, or kind of application, shall be given only if and when the said commission shall find or determine that the granting or approval of such application is necessary or proper for the service, accommodation, convenience, or safety of the public."

Section 41 of the same Act provides as follows:

"*Hearings, Subpoenas, Investigations and Orders.*—For the purpose of enabling the commission to make such finding or determination it shall hold such hearings, which shall be public, and subpoena and examine such witnesses and compel the production of such books, papers, contracts or other documents, and make such inquiries, physical examinations, valuations, and investigations as it may deem necessary. Due notice of every such hearing shall be given, and in every case the commission shall make a finding or determination in writing stating whether or not its approval is given, and if given, shall issue its certificate, to be known as the certificate of public convenience, under its seal, and file a duplicate of every such certificate."

According to the language used in said Sections, when any entity applies to the Commission for the approval of the construction of a crossing, said entity, in order to make such a construction, must present a "certificate of public convenience" issued by the Commission. In our opinion the

issuance of this certificate is not required in the case at bar. The petition herein was not made by a public or private entity, seeking the approval for the establishment of a crossing in a determined place, but by a group of residents, a part of the public, who asked the Commission to order a public-service company to construct a crossing.

In this case the Commission, after making the proper investigation, ordered the company to construct the crossing. We do not think that the "certificate of public convenience" is necessary; the order is sufficient. If the company does not think that it is sufficient, it should then ask the Commission, before constructing the crossing, to approve the plats and to issue the "certificate of public convenience." But in our opinion the Commission does not have to issue the same before ordering the construction of said crossing.

For the aforesaid reasons it is our opinion that the error assigned was not committed.

██ 4, 5, and 6. It is alleged in the fourth, fifth, and sixth assignments of error that, since it does not appear from the evidence that the settlement south of the railroad tracks has been approved by the insular or municipal authorities as an urbanization, or that the road running south of the tracks in the place where the construction of the crossing is ordered, has been officially recognized as a public road or street, the Commission lacks authority to order the construction of the aforesaid crossing.

Unquestionably this is the principal issue to be determined in this case.

The evidence showed that south of the tracks of the American Railroad Company of Porto Rico, at Stop 26½, there is a settlement on the lots belonging to the People of Puerto Rico, and that said lots are not urbanized and that no urbanization plat has been approved by the Department of Health or by the Government of the Capital, although there is one approved by the Department of the Interior.

That south of the tracks, at the place where the crossing is sought, there is a road which runs southward and penetrates into said settlement. That north of the tracks at the same place also, where the construction of the grade crossing is sought, there is a street, which runs northward and joins Fernández Juncos Avenue. In other words, the road is the continuation of the street, but at the place occupied by the railroad tracks there are certain obstructions placed by the company which prevent the traffic of vehicles and makes it difficult for the pedestrians to go from one side of the tracks to the other. Notwithstanding this, said road and the street north of the tracks are used by the residents of the ward in order to go back and forth from their homes to Fernández Juncos Avenue. And this road is also used by the rest of the public which goes to said settlement.

The question to be determined, therefore, is whether or not it is a public road.

In its statement of the case and opinion the lower court stated:

". . . the evidence shows that the Department of the Interior has approved the urbanization plat and that in said plat there appears a street in the same place where the road lies today. And the incontrovertible and uncontroverted fact is that whether illicit or legitimate, the settlement exists and the street or road also exists, and the street or road is used by the public in the same manner as any public road is used except that, at the point where the road reaches the tracks, there are certain obstructions placed by the appellant which prevent automobile movement from one side to the other of the tracks. This being the real situation, we think that the road should be considered as public for the purposes of Section 34 of the Public Service Act. And it being a public road, the Commission is obviously authorized to order the establishment of the grade crossing. See *Louisville etc. R. Co.* v. *Public Service Commission*, 206 Ind. 51, 185 N. E. 902."

The evidence presented to the Commission justifies the conclusion reached by the lower court in deciding that said

road was public. And it being a public road, we believe that, pursuant to the provisions of §34 of the Public Service Act, the Commission acted within its powers in ordering the company to construct the crossing.

In support of its decision, the lower court relies on *Louisville & Nashville Co.* v. *Public Service Commission of Indiana*, (1933), 206 Ind. 51, 185 N. W. 902. The doctrine in this case is in our opinion applicable to the case at bar, even though the facts are not exactly the same inasmuch as in said case the lots had been urbanized. In that same case, in denying a motion for reconsideration, 188 N. E. 321, the court stated:

". . . we know of no law or reason that would prevent a public highway, privately laid out and dedicated and accepted by the public, from crossing a railroad right of way in the same manner as it would cross a public highway, since, after all, the right of way of a railroad is dedicated to a public use."

Appellant alleges that the Commission is not authorized to establish public streets or roads. We agree; but in the case at bar we are not dealing with the establishment of any public street or road. We are only dealing here with an order directing the railroad company to establish a grade crossing in the place indicated by the Commission, which is used daily by a considerable number of persons, part of the public, who have their dwellings on the other side of the tracks and whose safety must be protected by the Commission. And this is within the authority granted by law to the Commission. It is merely a measure for the safety of the public who use the street or road lying there.

The necessity and convenience of said crossing has not been challenged, but only the authority of the Commission to order its establishment, and this authority clearly arises from the law which confers on the Commission full discretion as to the determination of the manner and place where crossings involving public roads and railway tracks should

be constructed. In our judgment the Commission did not abuse its discretion.

■■ Appellant further alleges that it is being deprived of its property without due process of law; that the servitude of right of way may not be acquired by prescription, but by title; and that the fact that the dwellers of the ward south of the track cross the latter creates no right in their favor.

The appellant is mistaken. In the first place, it has not been proved of what property appellant is being deprived. If it means the strip of land over which the tracks cross, there is no evidence that the same belongs to the company or if it simply has a right of way or permission. The lower court decided that ''in the absence of evidence we can scarcely determine whether appellant has been deprived of any property.'' With this we fully agree. Nor are we dealing with the establishment of a servitude of right of way, properly speaking, but rather with the right which the public has to use the land occupied by railway tracks where a public road crosses said tracks. The public has such a right, for as stated in *Louisville & Nashville. R. Co.* v. *Public Service Commission,* 188 N. E. 321, (on motion for reconsideration) the railroad right of way is dedicated to the public use the same as the road, and the public has as much right to cross the tracks at an intersection of the public road and railroad as it has the right, when using a public highway, to cross a highway on a road intersected by tracks, so long as the crossing is not inconsistent with the purposes for which it was constructed, which is not the case herein. (See the cases of *City of Fort Wayne* v. *Lake Shore & M. S. Ry. Co.,* 32 N. E. 215, 218; 132 Ind. 558, *Louisville & Nashville R. R. Co.* v. *City of Louisville,* 114 S. W. 743, 749 (*in fine*); 131 Ky. 108.)

As to appellant's theory because of the fact that residents of the ward south of the tracks cross the same no right is vested in their favor, we agree with it. Such an act does not grant them any right and it is for that reason that they applied to the Commission in order that the latter should establish such a right by determining whether or not a crossing should be established in order to enable these persons to pass, and that is exactly what has happened in this case.

In our opinion the 4th, 5th, and 6th errors assigned by the appellant do not exist.

■ That the lower court committed error in deciding that the order of the Public Service Commission is not contrary to the Insular and Federal policy of eliminating grade crossings.

We believe that such policy of the Insular or Federal Government has nothing to do with the authority of the Public Service Commission to order the establishment, relocation, or elimination of grade crossings granted under §34 of the Public Service Act. Neither the Insular nor the Federal Law affects any of the powers of the Commission. The Federal law refers to those grade crossings "which are used by a considerable volume of highway traffic or which are frequently occupied by train movements," in which case the tendency is to eliminate not the crossing but the grade crossing.

(See Act No. 100 of 1941, p. 760, and the Act of Congress of June 16, 1937, (Pub. 686, 74th Congress) and the Regulations of the Secretary of Agriculture of the United States of February 9, 1937, §8.)

In our opinion no error was committed by the lower court.

■ 8. This error, alleging that the railroad company was deprived of its property without due process of law, has been discussed jointly with the 4th, 5th, and 6th assignments

and, in our opinion, it has no merit as it was not proved that the land belonged to the appellant.

Since none of the errors assigned by the appellant was committed, the judgment rendered by the lower court should be affirmed.

Mr. Chief Justice Del Toro did not participate herein.